AMBROSE MUNDY AND MIDDLESEX WATER COMPANY, PROSECUTORS, v. THE TOWNSHIP OF RARITAN, THE BOARD OF COMMISSIONERS OF THE TOWNSHIP OF RARITAN AND W. G. FRITZ COMPANY, INCORPORATED, RESPONDENTS.

AMBROSE MUNDY AND MIDDLESEX WATER COMPANY, PROSECUTORS, v. THE BOARD OF CONSERVATION AND DEVELOPMENT OF THE STATE OF NEW JERSEY, THE BOARD OF COMMISSIONERS OF THE TOWNSHIP OF RARITAN AND THE CITY OF PERTH AMBOY, RESPONDENTS.

Argued October term, 1928—Decided January 3, 1929.

Before Justices MINTURN, BLACK and CAMPBELL.

For the prosecutors, *Frank Bergen.*

For the respondent city of Perth Amboy, *Harry S. Medinets.*

For the respondent board of conservation and development, *Edward L. Katzenbach.*

For the respondent township of Raritan, *Martin & Reiley* and *Thomas L. Hanson.*

For the respondent W. G. Fritz Company, Incorporated, *Borden D. Whiting.*

PER CURIAM.

An understanding of these matters requires a somewhat extended recital of facts and events.

The prosecutor Middlesex Water Company is a corporation authorized and engaged and is a taxpayer therein. The other prosecutor, Ambrose Mundy, is the superintendent of the water company and is also a taxpayer in the township of Raritan.

A section of the township known as Piscataway has a population of four thousand to four thousand five hundred; is growing rapidly and has no water supply.

It appears that in June, 1927, the township went under a commission form of government and that immediately after the commissioners were elected and organized steps were taken to secure a water supply for that section of the township before referred to.

The prosecutor, Middlesex Water Company, was approached upon the subject and it appears that in January, 1928, made a proposition to supply water to certain portions of the territory desired by the township authorities to be served, and estimated the cost of laying mains, &c., at something over $200,000, and required that the township should provide fifty per cent. of the outlay, without interest or return except repayment of principal over a long term and upon uncertain conditions and happenings. This proposition was declined by the township authorities, because it would seem that the service contemplated did not cover sufficient territory; that the township considered that the proposed money advancement would be illegal and because of dissatisfaction with the service being furnished by the water company to other portions of the township.

The township commissioners then turned their attention to the question of constructing and laying the necessary mains, service pipes, &c., as a municipal undertaking and the purchasing of water to be supplied through such distributing system to the inhabitants.

The water company, through Mundy, its superintendent, was again approached with the proposition of furnishing

water to the township to be by the latter distributed through a distribution system owned by it, and such proposition was declined.

Either prior or immediately thereafter negotiations were opened with Perth Amboy to purchase water from it to be supplied through a distribution system to be constructed by the township. Upon ascertaining that satisfactory arrangements could be made to thus secure and purchase water an ordinance providing for the making of a contract with Perth Amboy and for the construction of a distributing system was introduced on April 7th, 1928, and adopted April 27th, 1928.

The water company asserts that in January of 1928 its directors went over the territory and decided to lay the mains and furnish the service and directed its superintendent, Mundy, to purchase the necessary pipe and proceed with the work, and that in accordance therewith pipe was placed upon the ground and the company was about to place other pipe, expecting to commence the construction work in the spring, when it learned of the determination of the township to construct its own system and purchase water from Perth Amboy, and it thereupon suspended work awaiting the outcome of such movement.

After the adoption of the foregoing ordinance bids for construction work thereunder were advertised for and were received June 1st, 1928. On June 8th, 1928, the contract was awarded to the respondent W. G. Fritz Company, Incorporated, the lowest bidder, for $203,565.30, and the mayor and clerk authorized to enter into the necessary contract. This contract is dated June 15th, 1928.

A contract for the supply of water was entered into with Perth Amboy—this bears two dates—June 20th, 1928, and July 16th, 1928. This contract was approved and ratified by the township of Raritan by a resolution adopted July 20th, 1928.

On July 11th, 1928, the prosecutor Middlesex Water Company filed a bill in Chancery, verified by the affidavit of the prosecutor Mundy, praying that the contract between the township of Raritan and W. G. Fritz Company, Incorporated,

be decreed to be illegal and void and that the performance thereof by either party and the expenditure of money by the township or its board of commissioners in pursuance thereof be permanently enjoined.

On July 21st, 1928, a writ of *certiorari* was allowed bringing up for review the contract of W. G. Fritz & Company. This was upon notice under date of July 17th, 1928. In this proceeding Ambrose Mundy was the only prosecutor. On September 22d, 1928, the Middlesex Water Company applied to be and was admitted as a party prosecutor, and it seems that sometime prior thereto the bill in Chancery before referred to had been dismissed because it presented a cause for which there was an adequate remedy at law.

At the opening of this term of this court, under a rule to show cause previously allowed, a writ of *certiorari* was allowed to the same prosecutors bringing up for review the proceedings of the board of conservation and development approving the contract for a supply of water between the city of Perth Amboy and the township of Raritan, and by order of this court both proceedings were consolidated and directed to be argued together.

The reasons filed under the original writ (attacking the Fritz contract) are four in number:

(1) That prior to the time such contract was executed no application had been made nor consent obtained by Raritan township from the North Jersey district water supply commission as required by *Pamph. L.* 1915, *ch.* 241.

(2) That at such time no application had been made for or obtained from the board of conservation and development under *Pamph. L.* 1910, *p.* 551; 4 *Comp. Stat., p.* 5801 (board of conservation and development being constituted under *Pamph. L.* 1915, *p.* 428, § 5; 1 *Cum. Supp. Comp. Stat., p.* 621, to take place of state water supply commission) to divert water from any source or for approval of plans to construct water works.

(3) That at such time the township was not providing for a supply of water in the manner authorized by "An act concerning municipalities" (*Pamph. L.* 1917, *ch.* 152), and

therefore had no power to execute such contract or to lay mains in the streets, &c.

(4) Because of the foregoing the township could not use the mains proposed to be laid under such contract and the expenditure thereunder and therefore would be illegal.

Another or fifth reason was added by permission of the court on October 1st, 1928, viz.:

(5) The Raritan river is a tidal, navigable stream, and permission of the United States war department and the board of commerce and navigation of New Jersey has not been obtained to lay a main across said river, by which to obtain a supply of water from Perth Amboy under its contract with Raritan township, dated July 16th, 1928.

The answer to reasons one to four is that at the time of the execution of the Fritz contract the consents referred to in reasons one and two had not been obtained nor had they been obtained at the time of the allowance of the writ, but, says the township, in answer to all four reasons, we are proceeding under the act concerning municipalities (*Pamph. L.* 1917, *ch.* 152), particularly article 52, section 3, subdivision 6 of section 1 and section 15, and we are not diverting water by means of a new supply but purchasing a surplus from Perth Amboy, and we have now, subsequently to the making of the Fritz contract and the allowance of the writ of *certiorari* obtained the consent required by said act, and we are not controlled by nor required to proceed under *Pamph. L.* 1910, *p.* 551, *supra*. Further, that the contract for the purchase of water from Perth Amboy as well as the work of constructing the distributing system covered by the Fritz contract were authorized by the ordinance of April 27th, 1928, the validity of which ordinance is not attacked by these proceedings.

The first question demanding consideration is whether the consents of the department of conservation and development and the North Jersey district water supply commission not having been obtained before the letting and execution of the contract with W. G. Fritz Company, invalidated that contract, or expressing it otherwise, was the township without legal authority to so contract.

Section 3, article 32 of the Home Rule act, *supra,* provides—

"Every municipality providing for the supply of water in one or more of the methods aforesaid shall have power to lay and maintain pipes and mains, &c."

Subdivision b of section 1 provides—

"Any municipality may enter into a contract * * * with any other municipality in this state having water works * * * to obtain a supply of water * * *."

Section 15 provides—

"It shall be lawful for the governing body of any municipality owning or controlling water works to enter into and make a contract * * * with any municipality * * * to furnish a supply of water for such other municipalities and their inhabitants, for public and private uses for the term of a year or years; provided there shall first be obtained the approval of the department of conservation and development or other state board or department having jurisdiction of such matters * * *."

The construction to be placed upon section 3, *supra,* as urged by the township, is that the conclusion of its governing body and particularly the formal determination through the ordinance of April 27th, 1928, and the authorization thereby given its mayor and clerk to enter into a contract with Perth Amboy for the purchase of water for the public and private uses of the township is a "providing" for such supply as contemplated by that section.

The contention of the prosecutors is that this was not sufficient, but that all the consents before mentioned must be obtained in advance of entering into a contract for the laying of mains, &c.

We are inclined to think the contention of the township is sound. At least it seems to be logical from a practical standpoint. If, before the contract with the Fritz company could be entered into, it was necessary by the ordinance of April 27th, 1928, to authorize the execution of a contract with Perth Amboy, and to have the consents in question, why with equal force may it not be urged that it was necessary to actually enter into and execute the contract with Perth

Amboy and why may it not be well argued that all of this should have taken place before bids were called for or even before the township could legally determine by ordinance to construct a distributing system.

Under the facts of the case a situation was presented where, under section 3, article 32 of the Home Rule act, *supra,* the township of Raritan was "providing for the supply of water."

The prosecutors further contend, as already stated, that the application to the board of conservation and development should have been made under *Pamph. L.* 1910, *p.* 551, *supra,* and the proceeding was one controlled by *Oakland* v. *Board of Conservation and Development,* 98 *N. J. L.* 806. With this we do not agree, but, on the contrary, conclude that the matter is one controlled by the provisions of the Home Rule act, *supra.*

This we think also answers the contention as to the alleged irregularity of the proceedings before the board of conservation and development, which, as to a proceeding of this character we do not find to have been irregular.

Such proceedings worked no prejudicial harm to the prosecutors.

That this consent and that of the North Jersey district water supply commission were obtained subsequent rather than prior to the making of the contract with Perth Amboy and W. G. Fritz and Company is, we think, immaterial. At least no injury has come to the prosecutors or any taxpayer of Raritan township because thereof.

As to the contention of the prosecutors that the approval of the state board of health has not been obtained, the answer is that our attention has not been directed to, nor have we been able to discover, any statutory requirement for such an approval where one municipality is contracting to purchase surplus water from another.

The remaining contention of the prosecutors is that the consent of the war department of the United States and the board of commerce and navigation of this state to lay a main across the Raritan river in order to permit Perth Amboy to perform

its contract with Raritan township to make delivery of water to the latter on the north bank of that river has not been obtained.

We think this is not important and certainly not vital in its effect upon the Fritz contract or for that matter upon the contract with Perth Amboy.

While it may be true that the plan presented by the contract with Perth Amboy is that it will make delivery of the water under its contract to Raritan township by constructing and laying a main from the south to the north shore of the Raritan river which would require these consents, or one of them, yet the proofs show that this is not the sole means by which Perth Amboy can perform its contract and there is nothing showing or even indicating that such contract cannot or will not be performed if the necessary consents to lay the main under the river are not obtained.

We conclude that the matters brought up by both writs should be affirmed and the writs dismissed.

The respondents urge and have moved that both writs should be dismissed upon the ground of laches.

The Fritz contract was executed June 15th, 1928.

The writ of *certiorari* to review it was not allowed until July 21st, 1928, and notice of the application of such writ was not given until July 17th, 1928, and in the meantime Fritz and company had expended and obligated to expend considerable sums of money for and toward the carrying out and performance thereof.

On September 5th, 1928, the board of conservation and development approved of the proposed contract between Perth Amboy and Raritan township subject to certain conditions, the acceptance of which by both municipalities was filed September 20th, 1928.

Notice of an application for a writ to review the proceedings was given September 25th, 1928. This was heard September 29th, 1928, and the justice hearing the matter allowed a rule to show cause returnable before this court on the opening of the present term.

If the only matter before us was the Fritz contract we

would be inclined to agree with the respondents that the writ should be dismissed upon the ground of laches because we do not find the proofs in any wise excuse the delay of the original prosecutor, Mundy, in making an earlier and more expeditious application for the writ in that case.

This we cannot say as to the application for the second writ.

We are inclined to the conclusion that the writs should not be dismissed upon this ground but upon the merits as heretofore indicated.