Complainant alleges that the City of Hoboken owns a water supply system, and has appointed a superintendent in direct general charge thereof, who is not licensed by the Department of Health of the State of New Jersey. It seeks to enjoin the defendant from operating the alleged water supply system under the supervision of the declared appointee until he obtains a license to act from the State Department of Health. The statute upon which it appears to rely is Title 58 chapter 11 of RevisedStatutes, supplemented by P.L. 1938 ch. 206 p. 488 (R.S.58:11-18.1 et seq.)
The defendant denies the violation charged in the bill, and that part thereof alleging that it has appointed a person to discharge the duties of a superintendent or operator in direct general charge of the water supply system. It asserts that the statutes relied upon by the complainant have no application to it, since it neither owns nor controls a water supply system within the purview, intent and meaning of the statute, and that it has not appointed any person to discharge the duties of superintendent, or operator, in direct general charge of a water supply system as indicated.
The complainant concedes that the term "water supply system" is not defined in the statute; and that consequently the State Board of Health adopted a resolution giving it the following definition: "A water supply system is a system comprising structures which operating alone or with other structures result in the derivation, conveyance (or transmission) or distribution of water for potable or domestic purposes."
The City of Hoboken primarily obtains its water from the City of Jersey City which supplies it under a contract. It also has an auxiliary connection to the Hackensack Water Company system. It owns all the water mains and appurtenances within the limits of the city and it controls their operation.
The defendant city is governed by a Board of Commissioners duly elected under the Commission Form of Government Act (R.S.40:70-1, c., to and including chapter 76 et seq.), which act was adopted by the electorate of said city *Page 566 
on February 9th, 1915, and became effective February 16th, 1915. Upon the adoption of the Commission Act, control of the water department of the city, theretofore vested in a Board of Water Commissioners and in a Water Registrar, passed to the Board of Commissioners. Upon the distribution of powers in accordance withR.S. 40:72-4 among the five departments established thereby, the powers and duties relating to the city's potable water which was theretofore vested by statutory authority in a Board of Water Commissioners and a Water Registrar, were duly assigned by the aforesaid Board of Commissioners to the "Department of Revenue and Finance," of which William H. Gilfert, a duly elected member of said Board of Commissioners, is director. The city contends that Gilfert, as the director of the Department of Revenue and Finance, in exercising the administrative and executive powers and duties committed to him is not an appointee of the city or its governing body in the exercise of his powers and duties in relation to the maintenance of the city's water department or any other function devolving upon him by law as director aforesaid; and that the Board of Commissioners of the City of Hoboken having assigned all of the executive and administrative powers and duties relating to the water department of the city to the Department of Revenue and Finance, it is without power to interfere with the director thereof in the exercise of his powers and duties in relation thereto. Rubenstein v. Bayonne,121 N.J. Law 97; 1 Atl. Rep. 2d 305.
The complainant charges, in effect, that Gilfert undertakes "to discharge the duties of a person in direct general charge of the water supply system of the City of Hoboken (regardless of the title or designation);" that he "has signed the correspondence and approved certain forms for physical connection to the water supply system; and that "he holds no license to operate the water supply system." (Record, pages 4-5.)
The complainant's allegations are largely supported by the testimony of Donald M. Ditmars, an employee of the State Department of Health, occupying the position of Assistant Sanitary Engineer and Secretary of the Board of Health *Page 567 
Examiners. The defendant, with justification points to the fact that Ditmars' testimony (Record, pages 2-3) given over its objection, is based on hearsay and an unwarranted assumption of fact. His testimony, in part, is as follows:
"Q. And how does Hoboken operate its water supply system?
"A. From the records of the department I can testify — substantiating principally what Judge Fallon has said. The City of Hoboken obtains its water primarily from the City of Jersey City. It has an auxiliary or an emergency connection to the Hackensack Water Company. The City of Hoboken owns all the mains and appurtenances within the city, and assumes control of the operation of those mains and appurtenances. About six and a half millions per day of water is delivered to a population of approximately 59,000 people through 4,800 service connections, according to the records of this department furnished by the City of Hoboken. Also Mr. Thomas Haggerty was appointed to the position as superintendent of the Water Department on April 1st, 1915, and assumed that position until May 10th, 1941."
Record, pages 4-5:
"Q. Do you know who has charge of the water system of Hoboken now?
"A. According to the records of our department, William H. Gilfert has signed the correspondence and approved certain forms for physical connection to the water supply system.
"Q. Now, Mr. Ditmars, does Mr. William Gilfert have a license according to the law to operate the water department of the City of Hoboken?
"A. Mr. Gilfert holds no license to operate the water supply system."
The city says that Thomas Haggerty, now deceased, the person Ditmars referred to as "superintendent or operator," as being in direct general charge of the city's water system, was an employee known as a foreman. It contends it has never designated any person as superintendent of its water department (Record, pages 25, 26, 30); that foreman, Thomas Haggerty, for twenty-seven years was in charge of "pipe men and caulkers" who attended to the repairs of its *Page 568 
water mains. He and they had nothing to do with the supply or the operation of the city's potable water.
The rules and regulations of the State Department of Health, as contained in a 1938 pamphlet issued by it, establish the following classification of licenses required in the operation of water supply systems:
"Group No. 1: All water systems deriving water from surface run-off (or streams) employing purification and treatment units and having facilities for delivery of potable water of designed or accepted capacities of not less than approximately 100,000 gallons per day and all other systems of designed or accepted capacities of approximately 20,000,000 gallons or more per day.
Group No. 2: All water systems deriving water from ground water sources employing purification and treatment and having facilities for the delivery of potable water of designed or accepted capacities of not less than approximately 100,000 gallons per day and all other systems of designed or accepted capacities of approximately 2,000,000 gallons per day to approximately 20,000,000 gallons per day.
Group No. 3: All water systems deriving water from either surface or ground water supplies employing treatment and having facilities for the delivery of potable water of designed or accepted capacities of not less than approximately 100,000 gallons per day and all other water systems with designed or accepted capacities of approximately 200,000 gallons per day to approximately 2,000,000 gallons per day.
Group No. 4: All water systems deriving water from either surface or ground water supplies employing treatment and having facilities for the delivery of potable water of designed or accepted capacities of not more than approximately 100,000 gallons per day and all other systems having designed or accepted capacities of not more than approximately 200,000 gallons per day."
All of the foregoing groups are based on the source of water supply and the method of purification and treatment employed in each group.
It is apparent from the foregoing classification by the State Department of Health that the only water systems, operation of which licenses are required, are those employing "purification and treatment."
The evidence shows that the City of Hoboken neither derives its supply of water from any of the sources specified in any of the above groups, nor does it employ any of the methods of purification or treatment therein mentioned. Therefore, it is not amenable to the said provisions of the State Department of Health. *Page 569 
The process or treatment and purification of water supplied by Jersey City to the City of Hoboken (under contract therefor) is completed by the City of Jersey City before the water is delivered to the water mains of the City of Hoboken at the city line dividing the two municipalities; and as the water supply system of the City of Jersey City is within the aforesaid classification established by the State Department of Health, it must be assumed that statutory requirements and rules and regulations of the State Department of Health have been fully complied with. Proof thereof was presented at the hearing. The potable water consumed by users in the City of Hoboken comes from the same source, system and reservoir as that which is served to and consumed by users within the confines of Jersey City. If Jersey City observes statutory methods of purification and treatment and then serves it to its consumers through mains, c., I will not assume that such water, upon leaving the mains of Jersey City at its border line and entering the connecting mains of an adjoining municipality thereby needs further purification and treatment. Reason does not dictate the employment of another licensed superintendent or operator at the cities' dividing line, for water already purified and treated. I cannot conceive that to be the legislative intent.
Our statutes recognize the distinction between a "water supply" system and a "water distribution" system, as a reference to the following statute shows: By R.S. 1937, 40:62-107.4, a municipality owning a water supply system and supplying water therefrom to a water distribution system owned and operated by an adjoining municipality may purchase such distribution system of such adjoining municipality. Under the provisions of R.S.40:62-107.6, any municipality purchasing a water distribution system may operate such water distribution system as part of its own system. R.S. 40:62-49 says that where the supply of water is from more than one source, or the distribution plant to be acquired is connected with a distribution system of an owner in any adjoining municipality, both of which are served with water from the same source or sources, such municipality may purchase, lease or condemn not only the *Page 570 
source or sources of supply as aforesaid and the distribution system in said municipality, but also the distribution system in the adjoining municipality. Then by R.S. 40:175-23, establishing a Board of Public Works and Board of Water Commissioners in cities of the second class adopting the provisions of said act, it is provided inter alia:
"* * * that whenever any such board of water commissioners shall come into existence in any such city by virtue of any contract for the acquisition of a water supply and/or distribution system, and said contract shall not have been fully executed by transfer to such city, or wherever such board of water commissioners shall come into existence by virtue of appropriate governmental action of any common council or other governing body determining to acquire and/or construct such water supply and/or distribution system as in section 1 of this act provided, nothing herein contained shall be deemed to divest said common council or other governing body of authority to carry out on behalf of such city the acquisition of such water supply and/or distribution system, under the terms of such contract, and/or continue and complete the appropriate governmental action initiated for the acquisition and/or construction of such water supply and/or distribution system, but said water supply and/or distribution system, when so acquired and/or constructed shall pass to and under the control of said board of water commissioners."
This distinction between a water supply system and a water distribution system is recognized in the case of Mundy v.Raritan Township, 7 N.J. Mis. R. 78; 144 Atl. Rep. 162. In the instant case Jersey City supplies water to the City of Hoboken; the latter city merely distributes it. It performs no other function in the premise.
The City of Hoboken challenges the right of the complainant to define what the legislature's term "water supply system" implies. The challenge is justified. Such right to define resides in the courts. When the legislature fails to clarify a term of doubtful meaning, then the courts, if called upon, will define, interpret, or construe the statutory enactment. That is a well recognized judicial function. In People, ex rel. Akin v. Kipley,41 L.R.A. 775, wherein a municipality by ordinance undertook to define the meaning of the words "heads of any principal department of the city" as used in a Civil Service Act of the State of Illinois, the Illinois Supreme Court said (at p. 789): *Page 571 
"The ordinance assumes to define the meaning of the words, `heads of any principal department of the city,' as those words are used in the Civil Service Act. The power to interpret and construe a statute, or to define the meaning of the terms therein, rests with the courts and not with the legislature, and certainly not with a subordinate legislative body, like the common council of a city. 23 Am. Eng. Encycl. L. 449."
No evidence whatsoever has been offered by the complainant to show that the City of Hoboken has a water supply system within the intendment and meaning of the statute upon which this suit is based.
The legislature did not ordain that an elected official occupying the status which Commissioner Gilfert holds, is required to take out such a license as is mentioned in the statute relied upon by the complainant.
In view of the above expressed conclusions, I do not feel it is necessary to give consideration to the question of the constitutionality of the statutory enactment raised by counsel for the defendant.
I shall advise a decree dismissing the bill of complaint.