189 N.J. Super. 83 (1983)
458 A.2d 1307
LYNN PROFETA AND FRED R. PROFETA, JR., PLAINTIFFS-APPELLANTS,
v.
DOVER CHRISTIAN NURSING HOME, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
IHSAN M. UYGUR, M.D., THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1982.
Decided March 14, 1983.
*84 Before Judges MICHELS and TRAUTWEIN.
Fred R. Profeta, Jr., of the New York Bar, argued the cause for the appellants pro hac vice (Rothbard, Rothbard & Kohn, attorneys; Jonathan Kohn of counsel and on the brief).
Douglas S. Brierley, argued the cause for respondent Dover Christian Nursing Home (Schenck, Price, Smith & King, attorneys; Steven G. Sepaniak of counsel and on the brief).
No brief was filed on behalf of third-party defendant-respondent Ihsan M. Uygur, M.D.
PER CURIAM.
Plaintiffs appeal from a summary judgment dismissing their complaint. The complaint, in four counts, alleged that defendant Dover Christian Nursing Home (nursing home) violated its statutory duty to notify next of kin of any change in a patient's medical condition (count I); nursing home was negligent in its failure to give such timely notice (count II); nursing home's failure to give notice arose out of willful and wanton conduct (count III), and the home's disregard of its statutory duty was intentional (count IV). Plaintiffs sought both compensatory damages, based on their mental pain and anguish, and punitive damages. Defendant answered and joined the patient's private physician as a third-party defendant. Nursing home then moved for summary judgment, which was granted. This appeal followed.
*85 From the pleadings and affidavits before the trial court we glean the following undisputed facts. Plaintiffs Lynn and Fred Profeta are the daughter and grandson of Ferdinand Virgilio. Virgilio was admitted to nursing home on October 26, 1977.[1] Nursing home is a wholly-owned subsidiary of the Christian Research Institute, a Delaware corporation organized as a nonprofit religious and educational corporation authorized to do business in New Jersey. Virgilio became seriously ill on February 11, 1978. Plaintiffs were not notified of this fact. On February 12, 1978 Lynn Profeta, in making a regular visit to the nursing home, found her father vomitting on himself and unable to breathe. She immediately had her father transferred to a hospital but he died on February 14, 1978. Plaintiffs filed their complaint against the nursing home on February 8, 1980.
Plaintiffs sought recovery under N.J.S.A. 30:13-1 et seq., entitled "An act concerning the responsibilities of nursing homes and the rights of nursing home residents" and more commonly known as the nursing home residents' "bill of rights." The declared purpose of the act is to advance the well-being of the residents by defining their rights so that these rights may be better asserted. A finding that "residents of nursing homes are all too often given inferior treatment" led to the inclusion in the act of detailed standards of care for all nursing homes. Senate Institutions, Health and Welfare Committee, Statement to Senate Bill No. 944 (June 4, 1976).
In granting defendant's motion for summary judgment the trial judge concluded:
I am of the opinion that such a claim, the infliction of the emotional distress of a daughter and a grandson as a result of the death of a nursing home resident because of failure to notify, does not give rise to a statutorily-created or other cause of action in this jurisdiction.
I make brief reference without discussing the case in detail to Portee v. Jaffee, 83 [84] N.J. 88, decision of our New Jersey Supreme Court, 1980, in which *86 Justice Pashman carefully outlined the circumstances under which in this jurisdiction a person who does not have potential for personal injury himself or herself can recover for distress resulting from perceiving the negligently-inflicted injuries over another.
That's the limitation on that case. There was nothing perceived here. Everything occurred after the fact insofar as any emotional distress could be concerned.
Our careful review of the pleadings, the affidavits offered on the motion for summary judgment and the briefs discloses that the sole relevant issue on appeal is whether plaintiffs have requisite standing to bring suit under N.J.S.A. 30:13-8.[2] That statute states:
Any person or resident whose rights as defined herein are violated shall have a cause of action against any person committing such violation. The Department of Health may maintain an action in the name of the State to enforce the provisions of this act and any rules or regulations promulgated pursuant to this act. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for their violation. Any plaintiff who prevails in any such action shall be entitled to recover reasonable attorney's fees and costs of the action.
Another portion of the act states that "every nursing home shall have the responsibility for ... [e]nsuring compliance with all applicable State and Federal statutes and rules and regulations." N.J.S.A. 30:13-3(h). Plaintiffs point to a regulation, the present N.J.A.C. 8:30-2.4(a), as defining the right encompassed by the act which they claim has been violated. That regulation reads in pertinent part:
Written policies and procedures shall be established for notifying sponsors or next of kin in the event of significant changes in patient's status, patient charges, billings or other relevant administrative matters.
N.J.S.A. 30:13-8 allows actions to enforce the act and to recover damages for its violation. The statute provides that "[a]ny person or resident whose rights as defined herein are violated shall have a cause of action against any person committing such violation." Both parties ask this court to interpret the phrase "any person ... whose rights are defined herein." *87 Plaintiffs seek an interpretation which would include a resident's next of kin as a person who could sue while defendant contends that the phrase is intended to include only a resident or his legal guardian.
In this regard we strive to determine legislative intention. Did the Legislature intend that only residents or their guardians have the sole right to sue to enforce rights under the statute or did they intend to include those individuals, such as the next of kin, who are named in the act and given rights incidental to that of the resident? In this sense the phrase under scrutiny is ambiguous and must be interpreted in accordance with discernible legislative intent and reasoned judgment. State v. F.W. Woolworth Co., 154 N.J. Super. 550, 553 (App.Div. 1977); Imbriacco v. Civil Service Comm'n, 150 N.J. Super. 105, 109 (App.Div. 1977); State v. Hoboken, 130 N.J. Eq. 564, 570 (Ch. 1942). Plaintiffs point to two provisions of the act where the resident's next of kin are arguably given rights. The first is N.J.S.A. 30:13-5(g), which reads in pertinent part:
Every resident of a nursing home shall ... have the right to retain the services of his own personal physician at his own expense or under a health care plan. Every resident shall have the right to obtain from his own physician or the physician attached to the nursing home complete and current information concerning his medical diagnosis, treatment and prognosis in terms and language the resident can reasonably be expected to understand, except when the physician deems it medically inadvisable to give such information to the resident and records the reason for such decision in the resident's medical record. In such a case, the physician shall inform the resident's next of kin or guardian. [Emphasis supplied]
This provision is the cornerstone of plaintiffs' interpretation. They argue that since next of kin are given the right to receive medical information concerning a resident, they should also be permitted to recover damages suffered as a result of a violation of that right.
The second right of the next of kin said to be provided under the act is the right to be notified of the resident's change in status, as required by N.J.A.C. 8:30-2.4(a).
After careful consideration of the purposes and policies of the act we conclude that a proper interpretation of "persons whose *88 rights are defined herein" pertains only to a resident or his legal representative.
N.J.S.A. 30:13-1 announces the legislative thesis underlying the entire act:
The Legislature hereby finds and declares that the well-being of nursing home residents in the State of New Jersey requires a delineation of the responsibilities of nursing homes and a declaration of a bill of rights for such residents.
The provisions delineating the responsibilities of nursing homes (N.J.S.A. 30:13-3) and declaring the rights of their residents (N.J.S.A. 30:13-5) are the heart of the act. The remaining provisions serve only to implement these two sections. The sense of a statute is to be gathered from the whole of the expression. Martell v. Lane, 22 N.J. 110, 117 (1956). Once the "internal sense" of the law is clear it will prevail over the words of the act and "particular terms are to be made responsive to the essential principle of Law." San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148, 155 (1958). See, also, State v. Carter, 64 N.J. 382, 390-391 (1974); New Jersey Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330, 338 (1972); Wright v. Vogt, 7 N.J. 1, 6 (1951). The act at issue is clear in its purpose, and that is to advance the well-being of nursing home residents. Because the sense of the law, gathered from all internal indicia, is to aid residents, we believe the phrase "persons ... whose rights are defined herein" was intended to refer only to the resident or one asserting rights in his stead, such as a legal guardian. The asserted right of the next of kin to receive medical information concerning the resident if deemed advisable and to be informed of any significant change in the resident's status, support our conclusion. Both are primarily designed to aid the resident, when he or she is either incapable of acting in a meaningful manner on the information given or is likely to become incapable of so acting. For this reason we believe it is clear that the Legislature intended only the resident or his proxy to be able to vindicate infringement of these rights by an action for damages. Had the Legislature intended to confer this right on others, it would have explicitly done so. We therefore *89 conclude that plaintiffs have no standing to bring this suit under the act reviewed.
In view of this conclusion, it is unnecessary to address the remaining contentions and arguments of the parties.
Affirmed.
NOTES
[1] Defendant's statement of facts described Ferdinand Virgilio as 96 years old and suffering from organic brain syndrome and arteriosclerosis. These facts do not appear in the record.
[2] Point II of plaintiffs' brief states: Plaintiffs are suing on a statutory cause of action and requirements for a common law cause of action have no application to this case.