**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1790-23

KEITH SALTERS, a/k/a
KEITH LAMONT SALTERS,
as Executor of the ESTATE
OF RAYMOND SALTERS,

     Plaintiff-Appellant,

v.

SOUTH MOUNTAIN
REHABILITATION CENTER,
LLC, OCEAN HEALTHCARE,
LLC, d/b/a SOUTH MOUNTAIN
REHABILITATION CENTER,
and OCEAN HEALTHCARE
MANAGEMENT, LLC,

     Defendants-Respondents.

_____

Submitted May 21, 2025 – Decided June 17, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2309-20.

Hinson Snipes LLP, attorneys for appellant (Tracey C. Hinson and Eric D. Dakhari, on the briefs).

Burns White LLC, attorneys for respondents (William C. Mundy, Monica C. Fillmore, and Clayton R. Fritsch, on the brief).

Stark & Stark, PC, attorneys for amicus curiae The New Jersey Association for Justice (Jonathan F. Lauri, of counsel and on the brief).

PER CURIAM

Plaintiff Keith Salters, as executor of the Estate of Raymond Salters,[1] appeals from the following orders: an April 28, 2023 order granting a motion by defendants South Mountain Rehabilitation Center, LLC (South Mountain), Ocean County Healthcare, LLC d/b/a South Mountain Rehabilitation Center, and Ocean Healthcare Management, LLC (collectively, defendants) to bar a supplemental expert report authored by Dr. Carol White; an October 23, 2023 order partially granting defendants' motion for summary judgment; and a January 19, 2024 order granting defendants' motion to bar the trial testimony of Drs. James Lee and Shailender Karry and reconsidering the October 23 order for partial summary judgment, resulting in the dismissal of plaintiff's entire complaint with prejudice. For the reasons that follow, we affirm in part and reverse in part.

---

[1] We refer to Raymond Salters as decedent.

On September 15, 2019, decedent fell in his room at the South Mountain nursing facility. He explained he fell while attempting to retrieve an item from his refrigerator. Decedent lived at South Mountain from August 2019 to November 2019.

According to progress notes maintained by South Mountain, the facility's staff discovered decedent lying on the floor near his bed at about 12:40 a.m. According to the incident report, a nursing assistant was in decedent's room just prior to his fall but left to respond to another patient's call bell around 12:30 a.m. After his fall, staff members assessed decedent's condition and returned him to his bed. The notes indicated decedent did not complain of pain immediately after falling but reported hip pain earlier that day. The notes also stated decedent appeared confused and had an unsteady gait after falling. Though not observing any apparent injury, the notes reported staff members performed a neurological assessment and gave decedent medication "for possible pain."

South Mountain's medical director, Dr. Karry, submitted an affidavit during the course of the litigation. In his affidavit, Dr. Karry explained the day following decedent's fall, nursing staff told him decedent complained of pain and his left foot was externally rotated. Dr. Karry ordered decedent to be sent

A-1790-23

to Newark Beth Israel Medical Center for evaluation and any necessary treatment. Because he went to the medical center on September 16, 2019, South Mountain discharged decedent that day.

An x-ray at the medical center revealed decedent fractured his hip. Dr. Lee performed a partial hip replacement on September 16, 2019. According to an affidavit submitted by Dr. Lee, he "personally reviewed x-rays that confirmed that [decedent] suffered from a displaced subcapital left-hip fracture, femoral fracture." Based on his training and experience, Dr. Lee opined "within a reasonable degree of medical probability . . . [decedent] suffered the hip fracture from the fall that occurred on September 15, 2019."

South Mountain re-admitted decedent for rehabilitation after his hip surgery. The facility discharged him on November 9, 2019. Decedent subsequently lived with his family until his death in February 2023.[2]

In July 2020, decedent filed a lawsuit against defendants, alleging negligence and violation of his rights under the New Jersey Nursing Home Responsibilities and Rights of Residents Act (NHA or Act), N.J.S.A. 30:13-1 to -17. In a three-count complaint, plaintiff asserted claims against defendants for corporate negligence (count one), facility negligence (count two), and violation

---

[2] Decedent's death was unrelated to his fall at South Mountain.

A-1790-23

of the NHA (count three). After decedent's death, his son received permission to substitute as plaintiff and pursued the claims against defendants. Defendants filed an answer and the parties exchanged discovery.

According to a case management order extending discovery, the judge set February 28, 2023 as the date for completion of all discovery. However, upon agreement of counsel, the deposition of Dr. Carol White, plaintiff's expert, took place about a month after the close of discovery. The day after her March 30, 2023 deposition, plaintiff's counsel submitted a supplemental expert report offering Dr. White's opinion as to proximate cause.

Defendants moved to bar Dr. White's supplemental expert report. After hearing argument, the judge entered an April 28, 2023 order barring the supplemental expert report. Dr. White's supplemental expert report was the first time plaintiff proffered a causation opinion regarding defendants' purported negligence.

As the judge noted, Dr. White's supplemental expert report violated the discovery deadline in the case management order. The judge found the supplemental expert report was filed four-and-a-half months after the deadline for submission of plaintiff's expert reports. Additionally, the judge explained plaintiff failed to certify the information in the supplemental expert report was

5

unavailable prior to the discovery deadline. In fact, based upon Dr. White's deposition testimony, the judge concluded there was no new information considered by Dr. White in issuing her supplemental expert report.

Further, the judge found it incredulous that Dr. White's supplemental expert report was created and submitted to defense counsel within twenty-four hours after completing her deposition. At no time prior to Dr. White's deposition did plaintiff's counsel indicate an intent to submit a supplemental expert report from Dr. White.

The judge also explained defense counsel deposed Dr. White based on the information in her original expert report. The judge stated it was "not fair" to defendants to proceed with a deposition when plaintiff knew Dr. White was submitting a supplemental expert report. As the judge stated: "[T]he point of taking a deposition is to nail down the witness to the scope of the testimony available." Thus, the judge barred Dr. White's supplemental expert report, finding the document could and should have been submitted prior to Dr. White's deposition.

Defendants then moved for summary judgment. In a June 12, 2023 order, the judge denied the motion. The judge explained plaintiff's expert opined as to duty and breach of duty in support of the negligence claim, but did not offer an

6

opinion as to proximate cause. Instead of granting summary judgment, the judge set a deadline for plaintiff to submit affidavits from individuals whose testimony plaintiff intended to rely on at trial to establish negligence, including treating doctors and physicians. The judge directed the affidavits state the individual's area of practice and curriculum vitae, history of treating decedent, subject matter of the individual's expected testimony, and a proffer of the testimony, "including but not limited to proximate causation of alleged injury(ies)." After the judge's deadline, plaintiff submitted affidavits from Drs. Lee and Karry. Neither affidavit offered an opinion that defendants delayed in detecting or diagnosing decedent's hip fracture. Nor did the affiants identify damages resulting from the purported delay in the diagnosis and treatment of decedent.

Pursuant to an October 19, 2023 consent order, counsel agreed to extend discovery to November 30. The extension of discovery was limited to defense counsel completing the depositions of Drs. Lee and Karry.

On October 23, 2023, the judge entered an order, with an attached statement of reasons, granting summary judgment as to counts one and three. However, the judge denied the motion as to the punitive damages claim in count two. In granting summary judgment on count one (vicarious liability against the corporate defendant), the judge found plaintiff agreed to dismissal of that claim

on the record but later refused to sign a consent order reflecting the dismissal. Because plaintiff's counsel previously agreed to dismiss count one on the record, the judge granted summary judgment to defendants on that count.

The judge denied summary judgment as to count two because plaintiff provided the required proximate causation affidavits, albeit after the judge's July 13, 2023 deadline for submission of the affidavits. The judge considered the late affidavits, finding plaintiff followed the court's order and noting the substance of the "newly filed affidavits [could] be explored through depositions" of the affiants.

The judge also denied defendants' motion to dismiss plaintiff's punitive damages claim. He found "the record demonstrate[d] that there [were] reasonable issues of material fact regarding whether [d]efendant['s] [actions] were wantonly reckless or malicious in their delaying care for [decedent] after his fall," and "a reasonable jury could find that not providing immediate medical care to an elderly patient who suffered a fall to be a wanton and willful disregard of the rights of another."

Regarding plaintiff's NHA violation claims, the judge found the plain meaning of the terms "person" and "resident" under N.J.S.A. 30:13-5 required dismissal of count three. The judge concluded decedent was no longer a resident

8

at South Mountain when he filed his complaint. Thus, the judge held decedent could not pursue a claim for violation of the NHA because he was not a resident.

Because the term "person" is not defined in the NHA, the judge rejected plaintiff's "broad interpretation of the term" as applying to "any person." The judge read the NHA as requiring an individual be a resident to assert rights under the Act. He further found only a legal representative of a resident was a "person." Accordingly, the judge concluded decedent was not a "person" and lacked standing to file a claim under the NHA. In his statement of reasons, citing Profeta v. Dover Christian Nursing Home, 189 N.J. Super. 83, 88 (App. Div. 1983), the judge wrote: "The legislation was created and narrowly tailored to protect residents of nursing homes and keep nursing homes accountable for their care of those residents."

Due to scheduling conflicts, only Dr. Karry's deposition proceeded within the extended discovery deadline. Despite efforts to schedule his deposition before the November 30 deadline, Dr. Lee was never deposed.

After the deadline for deposing Drs. Lee and Karry, defendants moved to bar their trial testimony. They also filed a motion for reconsideration, requesting dismissal of plaintiff's claim for punitive damages and count two of the complaint.

9

After hearing oral argument, in a January 19, 2024 order, the judge granted the motion barring the testimony of Drs. Lee and Karry and dismissed plaintiff's entire complaint with prejudice. The judge concluded none of plaintiff's medical witnesses offered an opinion as to proximate cause in support of the negligence claim.

In his deposition, Dr. Karry testified he had no independent recollection of decedent or his injuries. According to his affidavit, "based on his training, experience, and expertise," and "within a reasonable degree of medical probability," Dr. Karry opined decedent "suffer[ed] the hip fracture from the fall that occurred on September 15, 2019." However, Dr. Karry testified he did not prepare the affidavit and reviewed no materials prior to signing the affidavit. He further testified that he signed the affidavit because plaintiff explained he would not have to appear in court if he did so.

Dr. Lee was not deposed. Dr. Lee's affidavit stated he performed a partial hip replacement after learning decedent "suffered a fall at another medical facility and experienced pain." Based on his "training, experience, and expertise," Dr. Lee certified "within a reasonable degree of medical probability" that decedent "suffered the hip fracture from the fall that occurred on September 15, 2019." Dr. Lee provided no additional information in support of his opinion.

A-1790-23

The judge explained the affidavits of Drs. Lee and Karry constituted impermissible net opinion because the documents presented "mere conclusions" without providing "the why and the wherefore that support[ed] [their] opinion." Thus, the judge barred the trial testimony of Drs. Lee and Karry.

Without an opinion on proximate cause, the judge held plaintiff was unable to prove negligence. Upon reconsideration, the judge granted defendants' motion to dismiss count two. Because plaintiff was unable to sustain a negligence claim, the judge dismissed plaintiff's claim for punitive damages. The judge then incorporated his fact-findings and legal conclusions placed on the record in an October 23, 2023 order and "dismissed with prejudice all of the counts [as to] all of the parties."

On appeal, plaintiff asserts the judge abused his discretion in barring the supplemental expert report of Dr. White and the testimony of Drs. Lee and Karry. Plaintiff further contends the judge should have conducted a N.J.R.E. 104 hearing prior to barring the testimony of Drs. Lee and Karry. He also claims the judge erred in finding these doctors were offering testimony as expert witnesses rather than fact witnesses. Plaintiff further argues the judge erred in granting summary judgment on all claims, including the claim for violation of the NHA.

11

I.

We first consider plaintiff's arguments regarding the judge's entry of summary judgment based on the absence of testimony on the issue of proximate cause to support his negligence claims.

We review a trial court's decision on a motion for summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Rule 4:46-2(c) provides a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We review a trial judge's decision regarding the admissibility of expert evidence for abuse of discretion. See Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008). An abuse of discretion occurs when a trial judge's decision "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005). When a summary judgment determination is premised on an evidentiary ruling, we first address the evidentiary issue. See Townsend v. Pierre, 221 N.J. 36, 53 (2015).

A.

For plaintiff to prevail on his negligence claims, he had to establish four elements: duty, breach of that duty, actual and proximate cause, and damages. See Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). Specifically, plaintiff was required to identify a duty owed to decedent and demonstrate defendants' breach of that duty actually and proximately caused decedent's injury. Fernandes v. DAR Dev. Corp., 222 N.J. 390, 403-04 (2015) (identifying the elements of a negligence claim). Plaintiff "bears the burden of establishing those elements 'by some competent proof.'" Davis v. Brickman

13

Landscaping Ltd., 219 N.J. 395, 406 (2015) (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

Plaintiff contends the judge erred in barring Drs. Lee and Karry from testifying at trial and their testimony would have established decedent's injury was proximately caused by his September 15, 2019 fall at South Mountain.

N.J.R.E. 703 governs the admissibility of expert testimony. The Rule mandates an expert opinion be grounded in "facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts." Townsend, 221 N.J. at 53 (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)).

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (quoting Polzo, 196 N.J. at 583). Under the net opinion rule, experts must "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are [] reliable." Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992). An expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Townsend, 221 N.J.

at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

"[E]xpert opinions are inadmissible if they constitute 'net opinions,' that is, opinions that constitute 'bare conclusions, unsupported by factual evidence.'" Funtown Pier Amusements, Inc. v. Biscayne Ice Cream & Asundries, Inc., 477 N.J. Super. 499, 516 (App. Div.), certif. denied, 257 N.J. 408 (2024) (quoting Buckelew v. Grossbard, 87 N.J. 512, 524 (1981)).  An expert's opinion may be barred as net opinion if "based merely on unfounded speculation and unquantified possibilities."  Townsend, 221 N.J. at 55 (quoting Grzanka v. Pfeifer, 301 N.J.Super. 563, 580 (App. Div. 1997)).  Importantly, "the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom" is a fatal flaw that bars an expert's opinion.  Buckelew, 87 N.J. at 524.

We reject plaintiff's challenge to the judge's exclusion of testimony at trial by Drs. Lee and Karry as improper net opinion testimony.  Contrary to plaintiff's argument, Drs. Lee and Karry were proffered to provide an opinion as to proximate cause in support of plaintiff's negligence claims as stated by the judge on June 12, 2023.

In his June 12, 2023 statement of reasons, the judge concluded plaintiff "established a prima facie case as to duty and breach" through Dr. White's original expert report but found Dr. White's report did "not provide sufficient evidence to establish proximate cause of the alleged injury(ies)/damages without further supplementation." Thus, the judge anticipated supplemental expert testimony opining as to proximate cause for plaintiff to establish a negligence claim.

Applying well-settled case law addressing opinions offered by medical witnesses, we discern no abuse of discretion in the judge finding the opinions of Drs. Lee and Karry constituted inadmissible net opinion. Neither physician cited a particular duty of care which defendants allegedly failed to follow. Additionally, neither doctor provided a causal connection between decedent's injury and defendants' purported failure to exercise any duty of care.

As treating doctors, Drs. Lee and Karry could testify decedent's injury was caused by a fall. But, as fact witnesses, they could not and did not establish the fall was associated with any negligent action on the part of defendants. Nothing in the affidavits or Dr. Karry's deposition opined South Mountain's actions or inactions led to decedent's fall. The doctors' opinions were limited to stating

decedent's injury was caused by a fall but failed to articulate proximate cause required to prove a negligence claim.

We also reject plaintiff's claim that the judge should have conducted a N.J.R.E. 104 hearing prior to barring Drs. Lee and Karry from testifying at trial. Such a hearing is used to determine the admissibility of an expert's testimony. See Kemp ex rel. Wright v. State, 174 N.J. 412, 427 (2002). A decision regarding the need to conduct a N.J.R.E. 104 hearing rests within the discretion of the trial judge. Id. at 428. We review a decision by a trial judge declining to conduct such a hearing for abuse of discretion. Est. of Hanges v. Metro Prop. & Cas. Ins., 202 N.J. 369, 383-84 (2010).

In this case, there was no need to conduct a N.J.R.E 104 hearing because Drs. Lee and Karry were qualified to offer fact testimony about their treatment of decedent. However, to establish proximate cause, a witnesses must have some specialized knowledge beyond the scope of lay witness testimony. See Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., 250 N.J. 368, 384 (2022). Nothing in the affidavits of Drs. Lee and Karry or in Dr. Karry's deposition offered an opinion as to proximate cause. While Drs. Lee and Karry established decedent suffered injury due to his fall, neither doctor connected his

A-1790-23

injury to any alleged negligence—specifically, defendants' alleged delay in treatment or failure to diagnose.

Based on the doctors' failure to establish proximate cause, the judge did not abuse his discretion in barring the affidavits and trial testimony of Drs. Lee and Karry without a N.J.R.E. 104 hearing. Without proximate cause evidence, the judge properly granted summary judgment to defendants on plaintiff's negligence claim.

B.

We next address plaintiff's argument the judge erred in barring Dr. White's supplemental expert report. Trial judges have broad discretion to establish discovery deadlines. See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). The "admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend, 221 N.J. at 52. Absent clear abuse, we will not interfere with the exercise of that discretion. See Nicholas v. Hackensack Univ. Med. Ctr., 456 N.J. Super. 110, 117 (App. Div. 2018).

Having reviewed the procedural history concerning Dr. White's issuance of her supplemental expert report, we are satisfied the judge did not err in barring that report. Dr. White's supplemental expert report was submitted many months

18

after the close of discovery. Plaintiff failed to offer any explanation for the delay in submission of a supplemental expert report. Rule 4:17-7 required plaintiff to submit a certification explaining the information necessitating a supplemental expert report was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date. A due diligence certification must state a "precise explanation that details the cause of delay and what actions were taken during the elapse time." Bender v. Adelson, 187 N.J. 411, 429 (2006).

Here, Dr. White testified at deposition there was no new or additional information informing her expert opinions. Nor did plaintiff supply a due diligence certification explaining the reasons for the untimely submission of Dr. White's supplemental expert report.

Additionally, plaintiff supplied the supplemental report just twenty-four hours after defense counsel completed Dr. White's deposition. The judge found the submission of Dr. White's supplemental expert report after defense counsel completed her deposition based on the opinions in her original report was unfair. Further, the judge explained plaintiff's counsel never indicated to defense counsel that Dr. White was preparing a supplemental expert report upon which plaintiff intended to rely at trial.

Under these circumstances, we discern no abuse of discretion in the judge's preclusion of Dr. White's supplemental expert report. In the absence of any expert opinion as to proximate causation, plaintiff was unable to establish a prima facie case for negligence. As a result, the judge properly granted summary judgment to defendants on the negligence claims

## II.

We next consider plaintiff's claim the judge erred in dismissing the vicarious liability claims against Ocean Healthcare, LLC d/b/a South Mountain Rehabilitation Center and Ocean Healthcare Management, LLC because plaintiff's counsel only agreed to dismiss the direct negligence claims against these defendants. We reject plaintiff's argument.

On October 6, 2023, plaintiff's counsel stated on the record during a colloquy with the judge that plaintiff failed to "[add]uce[] any testimony about the corporation's actions or inactions" and, therefore, would not "object to dismissing the claim about the corporate entities." Only after the judge requested an order memorializing counsel's statement did plaintiff's counsel clarify the agreement to dismiss referred solely to the direct claims against these defendants. Because the judge found plaintiff agreed on the record to dismiss the claims, the judge entered an order dismissing the claims in count one.

A-1790-23

However, we need not address whether plaintiff's counsel agreed to dismiss the claims in count one because we agree plaintiff failed to establish proximate cause in support of his negligence claims. As such, any claim for vicarious liability against Ocean Healthcare, LLC d/b/a South Mountain Rehabilitation Center and Ocean Healthcare Management, LLC similarly fails. Regardless of whether plaintiff's counsel misspoke on the record, for the reasons previously explained, we are satisfied plaintiff failed to demonstrate proximate cause such that his vicarious liability claims survived.

III.

We turn to plaintiff's argument the judge erred in dismissing his NHA claims against defendants. Plaintiff argues he is a "person" under the Act, and, as such, he is entitled to pursue a cause of action under the NHA. We agree.

In dismissing plaintiff's claims under the NHA, after reviewing the plain language and legislative history of the Act, the judge found the term "resident" meant "current resident," and the term "person" meant "residents" or "legal representatives" of current residents. The judge held that once a resident is discharged from a nursing facility, the individual cannot "bring a cause of action to enforce violations . . . of the NHA." Because the lawsuit was filed after

21

decedent's discharge from South Mountain, the judge concluded plaintiff could not pursue a claim for violation of the NHA.

The Legislature enacted the NHA in 1976 "to declare 'a bill of rights' for nursing home residents and define the 'responsibilities' of nursing homes." Ptaszynski v. Atl. Health Sys., Inc., 440 N.J. Super. 24, 32 (App. Div. 2015). The NHA was promulgated in response to growing concerns about the vulnerable elderly population in this state. See Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 116 (2014). The Act provides:

> Any person or resident whose rights as defined herein are violated shall have a cause of action against any person committing such violation. . . . The action may be brought . . . to enforce such rights and to recover actual and punitive damages for their violation. Any plaintiff who prevails in any such action shall be entitled to recover reasonable attorney's fees and costs of the action.
>
> [N.J.S.A. 30:13-8(a).]

The NHA defines a resident as "any individual receiving extended medical or nursing treatment or care at a nursing home." N.J.S.A. 30:13-2(e). The judge interpreted "resident" to refer only to current residents. While the NHA does not define "person," the judge interpreted the term to mean "residents" or "legal representatives" of residents.

We review a trial judge's interpretation of a statute de novo. Musker v. Suuchi, Inc., 260 N.J. 178, 185 (2025). A court's "'paramount goal' is to discern the Legislature's intent." Branch v. Cream-O-Land Dairy, 244 N.J. 567, 587 (2021) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "[T]he best indicator of that intent is the statutory language." DiProspero, 183 N.J. at 492. Courts give "statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citations omitted). Courts cannot "rewrite a plainly written statute or . . . presume that the Legislature meant something other than what it conveyed in its clearly expressed language." Branch, 244 N.J. at 587 (quoting Shipyard Assocs., LP v. City of Hoboken, 242 N.J. 23, 45 (2020)). Nor may courts "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment." DiProspero, 183 N.J. at 492 (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952)).

"Words in a statute should not be read in isolation." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013). Courts "read the statutes in their entirety and construe each part or section . . . in connection with every other part or section to provide a harmonious whole." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 380 (2024) (quoting C.A. ex rel. Applegrad v.

23

Bentolila, 219 N.J. 449, 459-60 (2014)). "In doing so, [courts] 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void or insignificant.'" Fuster v. Township of Chatham, 259 N.J. 533, 547 (2025) (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)).

The NHA provides: "Any person or resident whose rights as defined herein are violated shall have a cause of action against any person committing such violation." N.J.S.A. 30:13-8(a). Persons and residents are separate classes of individuals who may sue. See Pine Belt Chevrolet, Inc. v. Jersey Cent. Power & Light Co., 132 N.J. 564, 578 (1993) (quoting State v. Duva, 192 N.J. Super. 418, 421 (Law Div. 1983)) ("[T]he word 'or' carries with it natural disjunctive import.").

The NHA defines a resident as "any individual receiving extended medical or nursing treatment or care at a nursing home." N.J.S.A. 30:13-2(e). Verbs ending in "-ing" generally "express[] present action in relation to the time expressed by the finite verb in its clause." Merriam-Webster's Collegiate Dictionary, 982 (11th ed. 2020) (defining "present participle"). See also Verizon N.J. Inc. v. Hopewell Borough, 26 N.J. Tax 400, 417 (2012) ("[I]n using the word 'providing,' the Legislature used the present participle, which must be

interpreted here as 'currently providing' dial tone and access."); <u>Warwick v. Monmouth Cnty. Mut. Fire Ins. Co.</u>, 44 N.J.L. 83, 86-87 (Sup. Ct. 1882) ("[T]he word 'insuring,' . . . appropriately indicates a person holding such a continuing policy during any part of the time covered by the terms of the policy.").

As used in the Act, a plain and sensible interpretation of the word "receiving" means an individual currently receiving care. Because decedent was not receiving care at South Mountain when the lawsuit was filed, the judge properly concluded decedent was not a "resident" entitled to pursue a claim under the NHA.

However, we disagree with the judge's conclusion that decedent was not a "person" under the NHA. The NHA does not define the term "person." However, as noted by our Supreme Court, "the meaning of the word 'person' is ambiguous." <u>Hardwicke v. Am. Boychoir Sch.</u>, 188 N.J. 69, 88 (2006).

Here, the judge's interpretation of "person" fails to give effect to every word in the NHA. Courts "presume that every word in a statute has meaning and is not mere surplusage." <u>Jersey Cent. Power & Light Co. v. Melcar Util. Co.</u>, 212 N.J. 576, 587 (2013) (quoting <u>Cast Art Indus., LLC v. KPMG LLP</u>, 209 N.J. 208, 222 (2012)). "Resident" means current resident or their legal

representative. However, "person" cannot mean the same thing or else the term would be redundant or surplusage.

As a remedial statute, the NHA must be construed liberally to "avoid a literal interpretation of individual statutory terms or provisions that would be inconsistent with the overall purpose of the statute." Young v. Schering Corp., 141 N.J. 16, 25 (1995). "[W]here the purpose of legislation is remedial and humanitarian, any exemption must be narrowly construed, giving due regard to the plain meaning of the language and the legislative intent." Serv. Armament Co. v. Hyland, 70 N.J. 550, 559 (1976).

Restricting NHA claims to current residents would frustrate the Act's remedial intent. Under such an interpretation, nursing homes would be able to discharge residents to avoid a lawsuit alleging an NHA violation. Additionally, to adopt defendants' reading of the Act would require an individual living in an unsafe or neglectful environment to remain in a substandard facility while pursuing a cause of action for violation of the NHA. The Legislature could not have intended such a result.

Moreover, limiting an individual's ability to assert an NHA violation to his or her status at the time the action is filed ignores the broader intent of the Legislature to ensure nursing homes are accountable for their actions or

inactions. In reviewing the legislative history of the NHA, we are satisfied decedent is a "person" entitled to pursue a claim for violation of the Act. Any interpretation to the contrary would fail to give effect to the remedial purpose of the NHA and each of its provisions.

Defendants' reliance on Profeta v. Dover Christian Nursing Home, 189 N.J. Super. 83 (App. Div. 1983), is misplaced. Defendants argue Profeta stated the term "person" refers only to a current resident or their legal representatives. However, in Profeta, we addressed whether next of kin could constitute a person but never discussed whether a former resident constituted a person entitled to assert an NHA violation.

Here, decedent was a former resident of South Mountain. He filed a lawsuit on his own behalf asserting a violation of the NHA arising from defendants' actions or inactions while he resided at the facility. Thus, Profeta does not support defendants' arguments.

To the extent we have not addressed any remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed as to dismissal of counts one and two asserting negligence claims and dismissal of the punitive damages claim. Reversed as to dismissal of count three asserting NHA violations. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1790-23